## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| BARBARA A. RUFENER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv-00036-AGF |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Barbara Rufener was not disabled prior to January 23, 2021, and thus not entitled to supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  For the reasons stated below, the decision will be reversed and the case remanded for further proceedings.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (Doc. No. 16-1), as supplemented by Defendant (Doc. No. 17-1).  Together, these statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on January 24, 1966, protectively filed her application for benefits on September 6, 2018.[1]  Plaintiff alleged disability beginning on June 30, 2013,

---

[1]   The procedural dates provided by Plaintiff in her Brief in Support of Complaint (Doc.

later amending the onset date to September 21, 2018,[2] due to emphysema, COPD,

asthma, CVD, chronic airway obstruction, depressive disorder, lupus, fibromyalgia,

carpal tunnel, and frozen shoulder.  Tr. 20, 288.  Plaintiff's application was denied at the

administrative level on November 18, 2018, and she thereafter requested a hearing before

an Administrative Law Judge ("ALJ").

A video hearing was held on February 5, 2020.  Tr. 48.  Plaintiff, who was

represented by counsel, and a vocational expert ("VE") testified at the hearing.

Subsequent to the hearing, Plaintiff attended an internal medicine consultative

examination on April 17, 2021 with Shehryar Malik, D.O.  The Malik report and

subsequent vocational interrogatories were considered by the ALJ.  By a decision dated

July 14, 2021, the ALJ found that Plaintiff had severe impairments of coronary artery

---

No. 16) are incorrect.  Plaintiff states that she applied for Social Security Income on June 7, 2012, alleging disability since December 28, 2011; the Administrative Law Judge held a hearing on March 18, 2014, with a supplemental video hearing on September 9, 2014; she amended her alleged onset date to February 28, 2011; and the Administrative Law Judge issued his decision on September 26, 2014.  Additionally, Plaintiff's record cites in this procedural background section do not align with the record in this case.  The Court has carefully reviewed the record and ascertained the correct procedural dates.  It also appears the remainder of Plaintiff's brief including the statement of facts, contain the correct information, dates, and record cites.  As such, the Court will rely on the record, and Defendant's brief, which is consistent with the record, for the correct procedural dates.  The Court also notes that Plaintiff previously filed two applications for supplemental security income which were denied on March 21, 2007 and June 7, 2018, respectively (Tr. 273-74).  The dates provided by Plaintiff here also do not align with Plaintiff's previous applications.

[2]     Plaintiff previously filed applications for benefits under Title XVI, the most recent of which was denied on June 7, 2018.  Tr. 273.  In the present case, the ALJ found that there was no basis for reopening the prior denial.  However, the ALJ's decision refers only to the originally alleged onset date of June 30, 2013, and does not acknowledge the amended onset date of September 21, 2018.  This is discussed in further detail below.

disease, chronic obstructive pulmonary disease ("COPD")/emphysema, and fibromyalgia. Tr. 16. The ALJ also noted that there were additional diagnoses of hypertension, high cholesterol, gastroesophageal reflux disease ("GERD"), carpal tunnel syndrome, sialadenitis, gynecological issues, and plantar fasciitis but the record showed that these impairments were either well controlled with medication or did not impose more than minimal work-related functional limitations. The ALJ found that none of Plaintiff's impairments or combinations of impairments met or medically equaled the severity of the impairments listed in the Commissioner's regulations.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by the Commissioner's regulations, except:

> frequently climb of ramps and stairs but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasionally use the bilateral upper extremities for work above shoulder level; frequently reach in all other directions; occasionally handle with the bilateral upper extremities; unlimited fingering; with no concentrated exposure to noxious fumes odors dusts and gases, extreme cold heat and humidity; and, avoid working at unprotected dangerous heights and around unprotected dangerous machinery.

Tr. 20.

The ALJ found that prior to the established disability onset date, the claimant was a younger individual age 18-49 and on January 23, 2021, the claimant's age category changed to an individual of advanced age. Tr. 30. The ALJ further found that prior to January 23, 2021, Plaintiff could perform certain unskilled light jobs listed in the Dictionary of Occupational Titles ("DOT") (counter clerk, furniture rental consultant, and usher), which the VE testified that a hypothetical person with Plaintiff's RFC and

vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.  Tr. 31.  Accordingly, the ALJ found that prior to January 23, 2021, Plaintiff was not disabled under the Social Security Act.  The ALJ further found that beginning on January 23, 2021, the date the claimant's age category changed, considering Plaintiff's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform, therefore Plaintiff was disabled as of January 23, 2021 and her disability was expected to last twelve months past the onset date.  Tr. 31-32.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on May 13, 2022.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that: (1) the ALJ failed to properly apply Plaintiff's age category; (2) the ALJ failed to properly evaluate Plaintiff's severe impairments, specifically her carpel tunnel syndrome; and (3) the ALJ failed to properly consider medical opinion evidence.[3]  Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for an award of benefits or, alternatively, further evaluation.

---

[3]    Plaintiff frequently interchanges "Commissioner" and "ALJ".  For the purposes of this order, we will use "ALJ."

## DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  The court "may not reverse merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation

process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his or her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

## Failure to Consider Medical Evidence

Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff is capable of light work, specifically that the ALJ failed to properly evaluate the medical opinions of Dr. Rampton.  Indeed, the ALJ decision fails to mention Dr. Rampton's opinions, as well as numerous others.  For the reasons stated below, the Court

6

will reverse and remand for further consideration.

The regulations applicable to Plaintiff's claim provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." *See* 20 C.F.R. § 405.2520c(a) (2017) (applying to claims filed March 27, 2017, or later).  "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted).

The new regulations for claims filed after March 27, 2017, also require the ALJ to explain the persuasiveness of the medical opinions or prior administrative medical findings and explain how the supportability and consistency factors were considered.  *See* 20 C.F.R §§ 404.1520c, 416.920c.  The supportability factor states, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor states, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

### Dr. Jon Rampton's Findings

The record contains two records from Dr. Rampton, one from October 2015 and another from June 2016.  Tr. 620-623.  In 2016, Dr. Rampton diagnosed Plaintiff with essential hypertension, noting that she should continue on her current medications and watch her blood pressure, and chronic obstructive lung disease, noting that samples of medication were given and they discussed that she needed to stop smoking.  Tr. 627.  He also filled out a checklist form indicating the Plaintiff could stand/walk for 0-2 hours per day and could sit for 8 hours per day; required a job that permits shifting position at will to sitting, standing, or walking; could occasionally list ten pounds; can frequently twist, scoop, crouch and squat; rarely climb ladder and stairs; does not have significant limitations with reaching, handling or fingering; and that she was likely to be absent from work about three days per month.  Tr. 627-629.

The Court acknowledges that these records are dated more than two years prior to the amended onset date.  However, ALJs are required to articulate their consideration of *all* the medical opinions in a claimant's case record.  *See* 20 C.F.R. § 404.1520c(b).  Failure to consider a treating doctor's opinion, even those prior to the onset date, is cause for remand.  *See Kemmet v. Berryhill*, No. 1:16-CV-34 PLC, 2017 WL 3642028, at *7-10 (E.D. Mo. Aug. 24, 2017) (remanding case because ALJ erred by failing to consider doctor's opinions in the record that were dated two years prior to the alleged onset date); *Western v. Berryhill*, No. 1:16-CV-48 JAR, 2017 WL 1407118, at *3-4 (E.D. Mo. Apr. 20, 2017) (remanding case because ALJ failed to consider opinion evidence in the record before the alleged onset date).  Here we are presented with a unique situation in which

8

the medical records at issue pre-date a prior social security denial.

While evidence of medical records offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, cannot be considered as new evidence in a later proceeding, it can be considered as "background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding." *Mabry v. Colvin*, 815 F.3d 386, 390 fn. 4 (8th Cir. 2016) (quoting *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007)). "Moreover, medical evidence dated before the ALJ's prior decision but not considered in the prior proceeding constitutes new evidence and can be considered." *Id.* Here, the ALJ's decision is devoid of any mention of Dr. Rampton's opinions, and there is no indication in the record as to whether Dr. Rampton's opinions were considered in the prior decision.

In *Mabry*, the court considered the prior records, despite the defendant's urging that they were not relevant. *Id.* at 390, fn.4. Importantly, the *Mabry* court explicitly found that the ALJ "sufficiently considered the medical record provided by [the plaintiff]," and that the ALJ "must weigh *all* the evidence in the record." *Id.* at 390 (emphasis added). In *Western*, the ALJ's decision failed to mention two medical opinions that predated a prior denial, but were included in the record. 2023 WL 1407118, at *3. The Court remanded, finding that "an ALJ may not simply ignore medical opinions because they pre-date the onset of disability or post-date the last insured date, since that evidence can be relevant to a claim of disability." *Id.* (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005)) (other citations omitted). The court acknowledged that the ALJ may find some of the opinions conclusory and unpersuasive,

such as an opinion provided in check-list form, but remand was still necessary given that

the ALJ did not state whether or why he was disregarding such opinions. *Id.* at *4. The

court concluded,

> Although the ALJ stated that he considered all of the opinion evidence, he
> never mentioned Dr. Jones' opinions from June 7, 2011, October 26, 2012,
> or October 30, 2014 in his decision.  It therefore appears the ALJ failed to
> consider Dr. Jones' opinions at all.   By so doing, he committed error.

*Id; but see Ballowe v. Harris*, 650 F.2d 130, 133 (8th Cir. 1981) (finding that the

ALJ's failure to consider medical evidence predating the prior decision did not

prejudice the claimant upon evaluation of the record as a whole, and as such,

affirmed the ALJ's denial of benefits).

Here, Plaintiff was issued a non-favorable disability decision on June 7, 2018.

These records predate that decision by approximately two years.  Tr. 42, 44.  The ALJ's

decision does not explicitly consider Dr. Rampton's opinions, and the Court has no

indication of whether Dr. Rampton's opinions were considered in the prior proceeding.

Further, although not addressed by either party, the Court notes that the ALJ also failed to

address a number of records from 2017 and 2018, pre-dating the prior denial, including

the record which diagnoses Plaintiff with carpal tunnel syndrome.  *See* Tr. 631-680.[4]

The Court acknowledges that the ALJ may properly discount Dr. Rampton's

opinions, including his disability findings.  A medical opinion "rendered on a check-box

and fill-in-the-blank form," such as Dr. Rampton's, is "entitled to relatively little

---

[4]     The Court notes that the other 2017/2018 records (Ex. B14F) were cited in the
body of the ALJ decision, but not specifically discussed.  Whereas Dr. Rampton's
opinions (Ex. B13F) were neither cited nor discussed in the body of the decision.

evidentiary value on its face" and may be properly discounted as conclusory.  *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022).  Further, it appears Plaintiff saw Dr. Rampton on only two occasions.  However, given the ALJ's failure to mention any consideration of these records in his decision, the Court is unwilling to make such a conclusion on his behalf.  Dr. Rampton's disability finding suggests a potential sedentary RFC, and although the ALJ may properly discount this opinion, it nevertheless warrants consideration by the ALJ.  Likewise, given Dr. Rampton's opinions, the Court is unable to definitively conclude that Plaintiff was not prejudiced by these omissions.  *See Ballowe*, 650 F.2d at 133.

Here, the ALJ stated that he considered all the evidence, yet he never mentioned Dr. Rampton's opinions, or the other 2017/2018 opinions rendered prior to Plaintiff's previous denial.  As such, it appears that the ALJ failed to consider these opinion at all, whether as relevant background information or as new evidence.  As such, the Court will reverse and remand for further consideration.

**Remaining Arguments**

**Application of Age Categories**

Plaintiff argues that the ALJ "mechanically" applied the age categories in a "borderline situation" when he determined that Plaintiff became disabled on January 23, 2021, the day her age category changed to "advanced age."  Plaintiff also argues that the ALJ failed to evaluate Plaintiff as an individual "closely approaching advanced age" because his decision incorrectly stated that "prior to the established disability onset date, the claimant was a younger individual age 18-49.  On January 23, 2021, the claimant's

11

age category changed to an individual of advanced age." Tr. 30.  The ALJ decision never specifically evaluates Plaintiff as a person closely advanced age, despite this being the proper categorization from the amended onset date until January 23, 2021.  Some of this confusion appears to stem from the fact that the ALJ does not clearly specify which onset date he is using in his evaluation.

When determining whether an individual is disabled, the ALJ must consider the claimant's chronological age in combination with claimant's residual functional capacity, education, and work experience.  20 C.F.R. § 416.963.  The regulations set forth three age categories.  The categories include "younger persons" (persons under the age of 50), "closely approaching advanced age" (persons aged 50 to 54), and "advanced age" (person at age 55 and over).  *Id.*  If a claimant is a "younger person," the ALJ will "generally not consider that the [claimant's] age will seriously affect [claimant's] ability to adjust to other work.  However, in some circumstances, [the ALJ] consider[s] that persons 45-49 are more limited in their ability to adjust to other work than persons who have not attained the age 45."  *Id.*  If a claimant is "closely approaching advanced age", the ALJ will consider that the claimant's "age along with a severe impairment(s) and limited work experience may seriously affect [claimant's] ability to adjust to other work."  *Id.*  Lastly, the ALJ considers that if a claimant is of "advanced age," their "age significantly affect's a person's ability to adjust to other work."  *Id.*[5]

---

[5]     There are special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older). 20 C.F.R. § 416.63 (citing 20 C.F.R. § 417.968(d)(4)).

While the ALJ will not consider a claimant's ability to adjust to other work on the basis of claimant's age alone, advancing age is considered to be an increasingly limiting factor is the claimant's ability to adjust to other work. *Id.* Further, the regulations specifically instruct that the ALJ shall use the age categories that apply to the claimant during the period for which they are determining whether the claimant is disabled and instruct that the ALJ shall "not apply the age categories mechanically in a borderline situation." *Id.* Meaning, if the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors in [claimant's] case." *Id.*

Here, there is no dispute that the ALJ opinion stated that "[p]rior to the established disability onset date, the claimant was a younger individual age 18-49.  On January 23, 2021, the claimant's age category changed to an individual of advanced age."  Tr. 30. When the Plaintiff first applied for supplemental security income on September 6, 2018, she alleged an onset date of June 30, 2013.  Tr. 245.  As of this original onset date, Plaintiff would have been 47 years old and properly classified as a "younger individual." However, on August 19, 2019, Plaintiff amended her onset date to September 21, 2018. Tr. 256.  As of this amended onset date, Plaintiff was 52 years old and should have been classified as "closely approaching advanced age."

The ALJ decision does not clearly specify which onset date the ALJ is utilizing in his evaluation.  In its introduction, the decision notes that claimant is "alleging disability

beginning June 30, 2013." In Step One, the ALJ found that "claimant has not engaged in substantial gainful activity since the ***date of application***." Tr. 16 (emphasis added). In Step Two, the ALJ found that "[s]ince the ***date of application, September 6, 2018***, the claimant has had the following severe impairments…" *Id.* (emphasis added). In Step Three, the ALJ found that "[s]ince ***September 6, 2018***, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments…" Tr. 18 (emphasis added). In Step Four, the ALJ found that "[a]fter careful consideration of the entire record … that since ***June 30, 2013***, the claimant has the residual functional capacity to perform light work …." Tr. 20 (emphasis added). Then in Step Five, the ALJ found that "[p]rior to the ***established disability onset date***, the claimant was a younger individual age 18-49. On January 23, 2021, the claimant's age category changed to an individual of advanced age." Given that the ALJ decision never mentions the amended disability onset date of September 21, 2018, it is assumed that the "established disability onset date" the ALJ is referring to is June 20, 2013.

In any event, regardless of whether the ALJ was working off the date of application, September 6, 2018; the original onset date of June 30, 2013; or the amended onset date of September 21, 2018, the ALJ decision does not explicitly evaluate Plaintiff as an individual "closely approaching advanced age." Plaintiff would have turned 50 years old on January 24, 2016, as such, from January 24, 2016 to January 23, 2021, she should have been evaluated as an individual "closely approaching advanced age." The Court recognizes that even upon reevaluation of the Plaintiff under this age category, the

Medical Vocational Guidelines[6] suggest that an individual with limited education, no past relevant work, and limited to light exertional work, is considered "not disabled" as both a younger individual and as an individual closely approaching advanced age.  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rules 202.01 and 202.1.  However, upon remand, to the extent the medical opinions alter the ALJ's RFC determination, the ALJ shall reevaluate Plaintiff's disability determination.  The ALJ shall also clarify the onset date and explicitly evaluate Plaintiff as an individual closely approaching advanced age for the applicable period.

### Severity of Carpel Tunnel Syndrome

Plaintiff also contends that the ALJ's decision was flawed because her carpal tunnel syndrome was not determined to be a "severe impairment."  A severe impairment is defined as an impairment that significantly limits one's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  The Social Security Act further requires that an impairment and resulting limitation must last for at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  As noted above, the ALJ found several severe impairments, including fibromyalgia.  However, the ALJ found that Plaintiff's carpal tunnel syndrome was non-severe, noting that it was either well controlled with medication or did not impose more than minimal work-related functional limitations.

---

[6]    "The medical-vocational guidelines, or grids 'are a set of charts listing certain vocational profiles that warrant a finding of a disability or non-disability.'"  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011)).

Plaintiff argues that the evidence suggests otherwise.  Specifically, Plaintiff points to the diagnosis of carpal tunnel syndrome on August 24, 2017, at Northeast Missouri Health Council.  Tr. 648.  While this record was not explicitly discussed by the ALJ,[7] it is worth noting that the record also states that Plaintiff had been using wrist splints at night which resulted in significant improvement in her pain and resolved her numbness.  Tr. 649.  In May 2018, Plaintiff met with a Nurse McGowan at the University of Missouri Health Care Rheumatology clinic regarding joint pain and swelling.  Tr. 375.  Plaintiff complained of joint pain and swelling in her hands, frequent bilateral numbness and difficulty holding her coffee cup in the mornings.  *Id.*  The record indicates that her symptoms were suggestive of rheumatoid arthritis or possible osteoarthritis.  Tr. 376.  X-rays were taken of her hands and wrists, and showed no radiographic findings of inflammatory arthritis and mild bilateral hand and wrist arthritis.  Tr. 381.  Again, there was no mention of carpal tunnel syndrome.  On June 22, 2018, Plaintiff returned to rheumatology with complaints of swelling in her hands.  Tr. 372.  The record indicates that she had weaker grips and found items difficult to hold, as well as tingling in both hands.  *Id.*  She was diagnosed with possible osteoarthritis and prescribed medication.  Tr. 373.  Plaintiff then points to records from October 9, 2018, which indicate she had swelling in her hands, wrists, and lower forearms bilaterally.  Tr. 421.  However, the records make no mention of carpel tunnel, but state that her symptoms and labs were indicative of rheumatoid arthritis, for which she was prescribed medication.  *Id.*

---

[7]     The omission of this record in the ALJ's decision is discussed above.

On September 25, 2018, Plaintiffs complaints of swelling and tingling in her hands were again attributed to rheumatoid arthritis, and there was no mention nor diagnosis of carpal tunnel syndrome.  Tr. 406.  On June 11, 2019, records indicate puffiness in Plaintiff's hands and fingers bilaterally, but again the records suggest this is a result of fibromyalgia and there is no mention of carpel tunnel syndrome.  Tr. 493.  The records note that she was able to make a closed fist, but also note that Plaintiff complained of bilateral numbness in her hands and difficulty holding a coffee cup in the morning.  *Id*.

On August 20, 2019, the physical exam record notes that Plaintiff's hands had decreased in ability to clench and there was mild swelling bilaterally.  Tr. 588.  She was again diagnosed with arthritis and fibromyalgia.  Tr. 581.  The same day she was seen by Nurse McGowan at the rheumatology clinic, and the records indicate the same complaints, and also that she was able to able to make a fist.  Tr. 505.  She was diagnosed with joint pain and fibromyalgia and provided medication.  Tr. 606.  On September 19, 2019, Nurse McGowan provided a letter which stated that she began seeing Plaintiff in May 2018 with complaints of severe body pain, swelling of her extremities, joint pain, and extreme fatigue.  Tr. 579.  It also notes, that "[a]t time her hands are so swollen she cannot close her fingers into a fist," and "[Plaintiff] gas difficulty gripping and holding onto items.  She has difficulty picking up and holding small items."  *Id.*

On December 3, 2020, Plaintiff was seen for "hand pain."  Tr. 732.  The records indicate that Plaintiff complained of intermittent and fluctuating bilateral hand pain for two years that was aggravated by lifting and movement, and the pain was relieved by brace/splint and pain medications. Tr. 733.  The record notes that she has carpal tunnel

symptoms, including positive Phalen's, although no official diagnosis was given.  *Id.*

On February 15, 2021, during a rheumatology follow-up appointment, Plaintiff noted that she had occasional episodes of diffuse puffiness in hands or feet.  TR. 756. The examination revealed no active joint swelling, normal motion to hands, wrists and elbows, medication adjustments were suggested and prescribed.  *Id.*

On April 17, 2021, Plaintiff received an internal medical consultative examination with Shehryar Malik, D.O.  Tr. 760.  At this examination Plaintiff complained of carpal tunnel syndrome.  The examination found full muscle strength, normal sensation, normal elbow and wrist range of motion, no joint swelling, erythema, effusion, or deformity. The examination also noted that Plaintiff's hands appeared normal and she was observed to be able to grasp and turn a doorknob, pick up and grasp a pen and write a sentence and lift and handle personal belongings.  Tr. 763.  There was a diagnosis of fibromyalgia, but no diagnosis of carpal tunnel.  Tr. 764.

Plaintiff testified at the hearing that she wore braces on both hands and arms at night because they went numb and she felt stabbing pain constantly.  Tr. 47.  However, she also testified that she did all the grocery shopping and cooking for her household, does housework, and makes her bed.  Tr. 49, 59.  Further, in her Function Report, Plaintiff stated that she drives around the farm and checks on/feeds the cows, does laundry, cooks 3-4 times per week, and deep cleans 4-5 hours per week, but indicated difficulty gripping items such as cups, pens and utensils.  Tr. 299-304.

The ALJ's analysis on the severity of Plaintiff's carpal tunnel syndrome appears to be supported by substantial evidence on the record and on remand need only be

reevaluated to the extent the ALJ finds appropriate in light of the medical opinions and the proper age category.

**Nurse Cheryl McGowan, RN-FNP-BC's Findings**

Plaintiff also contends that the ALJ failed to properly consider the supportability and consistency factors in his evaluation of Nurse McGowan's findings, specifically her finding that Plaintiff could not lift and would have to lie down and need to elevate her legs.  On September 19, 2019, McGowan wrote a letter which stated the following, in relevant part,

> Barbara Rufener is a patient of my practice at the University of Missouri rheumatology clinic.  I began seeing her in May 2018 with complaints of severe body pain, swelling of her extremities, joint pain and extreme fatigue. At time her hands were so swollen she cannot close her fingers into a fist….
>
> She has tried medications such a over-the-counter Tylenol arthritis and nonsteroidal anti-inflammatories without much improvement in her condition.  In addition, the patient is taking medications that are used for nerve pain including Cymbalata and Gabapentin with minimal improvement….
>
> Barbara has difficulty gripping an holding onto items.  She has difficulty picking up and holding small items.  In addition she would not be able to lift items due to pain and weakness.
>
> She must change positions frequently due to pain.  If she would be employed it would need to be a part-time job, only working a few hours a day. Accommodations would include a chair and or a couch to lie on for several minutes every 1-2 hours.  She would need to be able to elevate her legs to decrease pain and swelling….

Tr. 579-580.

The ALJ found this opinion to be unpersuasive, noting that McGowan "relied heavily on the subjective report of symptoms and limitations provided by the claimant,

and seemed to uncritically accept as true most, if not all, of what the claimant reported. Tr. 30.  The ALJ then explained that there are good reasons for questioning the reliability of the claimant's subjective complaints, including the inconsistency with her severe complaints and the relatively conservative medical treatment; the failure to seek mental health treatment despite reporting severe and disabling mental health symptoms; Plaintiff's failure to follow-up on recommendations made by her treating doctors, including medication usage and smoking cessation, and her reports of daily activities. *See* Tr. 29.

The ALJ also addressed supportability, noting that McGowan's statements were not supported by her contemporaneous office or progress notes, and her own reports fail to reveal the type of significant clinical or laboratory abnormalities one would expect if the claimant were in fact disabled, nor did she specifically address this weakness. Further, the ALJ notes that the Plaintiff did demonstrate response to medication and was keeping active according to her own reports.

It is the role of the ALJ to evaluate the medical source opinions against the case record, including medical and non-medical sources, and conclude whether such opinions are supported by and consistent with the records.  *See* 20 C.F.R §§ 404.1520c, 404.1527. The ALJ sufficiently addressed the supportability and reliability factors in his evaluation of Nurse McGowan's opinion.  The persuasiveness of her opinion need only be readdressed to the extent the ALJ finds appropriate in light of the prior medical opinions.

**Limited Use of Hands**

Lastly, Plaintiff summarily argues that the limited use of her hands precludes her from performing light work.  Again, upon review of the record, the Court is not convinced that substantial evidence would support Plaintiff's contention.  It appears that the majority of these complaints were self-reported by Plaintiff, and the objective medical evidence frequently showed mild to moderate, non-debilitating pain, normal joint strength, little to no restriction of wrist flexion, mild swelling, no redness, and the ability to make a closed fist.  *See* Tr. 372, 406, 411, 489, 493, 505, 511, 604, 758, 760.  When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.  20 C.F.R. § 404.1529(c); SSR 16-3p.  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; treatment other than medical, measures used to relieve pain; and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson*, 600 F.3d at 931; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

The Eighth Circuit has held that an ALJ is not required to discuss each *Polaski* factor methodically.  *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005); *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).  The ALJ's analysis will be accepted as long as

the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints.  *Lowe v. Apfel,* 226 F.3d 969, 972 (8th Cir. 2000); *see also Brown,* 87 F.3d at 966.  Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (internal citations omitted).

Here, the ALJ acknowledged Plaintiff's complaints that she had difficulty using her hands, experienced hand pain, stabbing, and numbness in her hands and associated functional limitations including difficulty lifting items, dropping items without warning when her hands went numb, and pain after writing that she described as a "lightning strike" sensation.  Tr. 21.  While the ALJ did not specifically discuss whether Plaintiff's subjective complaints regarding her hand usage were credible, he did note Plaintiff's response to medication and use of braces on both her hands.  Tr. 21, 30.  The ALJ also utilized the *Polaski* factors in discussing the overall credibility of Plaintiff's complaints.

It appears that there is sufficient support in the record to support the ALJ's findings on this issue.  However, on remand, the ALJ may wish to reexamine whether Plaintiff's limited use of her hands precluded an RFC of light work in connection with the overall case.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**REVERSED and the case is REMANDED** for further proceedings consistent with this

Memorandum and Order.  A separate Judgment shall accompany this Memorandum and

Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 29th day of September, 2023